CRAIN, J.
|2The defendant, Brandy L. Bruno, was charged by bill of information with obstruction of justice involving a criminal proceeding in which a sentence of death or life imprisonment may be' imposed, in violation of Louisiana Revised Statute 14:130.1. The defendant initially pled not guilty. After .the trial court denied the defendant’s motion to quash the bill of information based on untimely prosecution, the defendant withdrew her not guilty plea and pled guilty as charged under North Carolina v. Alford, 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970), reserving the right to appeal the denial of the motion to quash pursuant to State v. Crosby, 338 So.2d 584, 588 (La.1976). The trial'court sentenced the defendant to ten years imprisonment at hard labor, suspended seven years of the sentence, and imposed five years of supervised probation. The defendant now appeals, challenging the trial court’s ruling on the motion to quash the bill of information based on untimely prosecution. We affirm the conviction and'sentence,
FACTS
.Because the defendant pled guilty, the facts of the offense were, .not fully developed; however, the following information was established at the hearing for the motion to quash. Larky Toups, the victim, was last seen on January 1, 2008, at a motel in-Bogalusa, Louisiana. Based on information obtained during the investigation, the investigating authorities believed Toups was murdered.. Although the record does not reflect the outcome of the initial investigation, Captain Tommie Sor-rell of the Washington Parish Sheriffs Of *808 fice reopened the investigation in 2013 when the Feliciana Crime Lab contacted her and inquired about the case.
The defendant had been a person of interest in the initial investigation, and Captain Sorrell, after investigating the defendant’s whereabouts, was able to make contact with her on February 6, 2Ó14. Captain Sorreli interviewed the defendant, 13and, according to Captain Sorrell, thé defendant confessed to being present when the victim was murdered and to assisting with the disposal of the body.
The State filed a bill of information on May 22, 2014, charging the defendant with tampering with evidence with the specific intent of distorting the results of a criminal investigation or proceeding where a life or death sentence may be imposed, a violation of Section 14:130.1. According to the bill of information, the offense occurred on or about January 1, 2008, “to the present.” The defendant responded with a motion to quash asserting that the prosecution was not timely. More specifically, the defendant urged that the charged offense'was neqessarily punishable by imprisonment at hard labor; therefore, pursuant to Louisiana Code of Criminal Procedure article 572 A(l), the prosecution had to be instituted within six years after the offense, meaning on or before January 1, 2014.
The motion to quash proceeded to a hearing where, pursuant to Louisiana Code of Criminal Procedure article 575, the State sought to -establish that the prescriptive period for instituting the prosecution had been interrupted by the defendant’s efforts to avoid detection, apprehension, or prosecution. After considering evidence of the defendant’s resi-dencés and relocations after January 2008, the trial court concluded that the State met its burden of proof on this issue and denied the motion to quash.s In her only assignment of error on appeal, the defendant asserts that the trial court erred in denying the motion to quash.
DISCUSSION
The prosecution of a non-capital felony that is punishable by imprisonment at hard labor must be instituted within six years after the offense. See La.Code Crim. Pro. art. 572 A(1). The institution of prosecution includes the filing of a bill of information that is designed to serve as the basis of a trial. See La.Code Crim. Pro. art. 934(7); State v. Cotton, 01-1781 (La.App. 1 Cir. 5/10/02), 818 So.2d 968, 971, writ denied, 02-1476 (La.12/13/02), 831 So.2d 982.
|4The charged offense is a non-capital felony that is necessarily ■ punishable by hard labor. See La. R.S. 14:130.1 B(l). According to the bill of information, the offense occurred on January 1, 2008, so the deadline for instituting the prosecution was January 1, 2014. The bill of informa: tion was filed less than six months after that date, so the prosecution was untimely unless, as the trial court found, the period of limitation was interrupted. See La. Code Crim. Pro. arts. 572 A(l) and 575(1).
The period of limitation established by Article 572 is interrupted if a defendant, for the purpose of avoiding detection, apprehension, or prosecution, flees from the state, is outside the state, or is absent from her usual place of abode within the state. See La.Code Crim. Pro. art. 575(1). The State has the burden of proving the facts necessary to show that the prosecution was timely instituted. La.Code Crim. Pro. art. 577. When a defendant has brought a motion to quash based on prescription, the State bears a heavy burden to demonstrate either an interruption or a suspension of the time limit has occurred. See State v. Rome, 93-1221 (La.1/14/94), 630 So.2d 1284, 1286. When the period of *809 limitations is interrupted, it commences to run anew from the date the cause of interruption no longer exists. See La.Code Crim. Pro. art. 579 B. Because the bill of information was filed on May 22, 2014, the present prosecution was timely if an interruption occurred at any point on or after May 22, 2008, which was less than six months after the offense.
At the hearing, Captain Sorrell testified that on August, 30, 2013, after receiving a visit from a representative of the Feliciana Crime Lab, she reopened the investigation of the Toups potential homicide. Captain Sorrell specifically began 'looking for the defendant on September 17, 2013, by pulling a comprehensive report that included such information as criminal history, residences, utilities, vehicle registrations, and by searching the police incident system. This | fiinformation revealed previous addresses for the defendant in Bogalusa, Louisiana, and Poplarville, Mississippi, and, beginning in 2009, in Opelousas, Louisiana.
After contacting authorities in Opelousas and Lafayette for assistance in locating the defendant, Captain Sorrell traveled to Opelousas on February 6, 2014, where she spoke with individuals who knew the defendant. One of those individuals, Lakeisha Bruno, who identified herself as the defendant’s former sister-in-law, informed Captain Sorrell that the defendant left two weeks earlier to go to New Orleans to take care of her ill father. Lakeisha Bruno also informed Captain Sorrell that the defendant had previously disclosed that the reason she moved to Opelousas was because she witnessed a man beaten to death in Bogalusa.
That same day, February 6, 2014, Captain Sorrell located the defendant in Boga-lusa at a house on Avenue E, which Captain Sorrell ultimately determined was the residence of the defendant’s stepfather. The defendant agreed to speak to investigators and, during the interview, admitted witnessing the victim’s murder and assisting in the disposal of his body. The defendant stated that she went to Poplarville shortly after the murder, but at some point went back and moved the body. The defendant then went to New Orleans, where she lived with Patrick, Bruno, whom she later married. After a few weeks in New Orleans, the defendant and Patrick Bruno moved to Michigan where they lived for six months. The defendant then returned to Louisiana and began residing in Opelou-sas, where she lived until early 2014.
Captain Sorrell admitted that she ■ obtained the address of the defendant’s stepfather on the first day'of her search for the defendant, but she never went to that address to- speak with him in an attempt to determine the defendant’s whereabouts. Captain Sorrell did, however, contact the defendant’s mother, who indicated that she did not know why the defendant moved to Michigan so suddenly, noting that the defendant uncharacteristically left her son behind.
IfiTHe defendant testified that she was living in Opelousas at the time of the hearing and had been living there since October 2008. According to the defendant, she went to Michigan in 2008 because Patrick Bruno was doing asphalt work there and because she wanted to leave Bogalusa in an effort to end her crack cocaine addiction. After spending five -to six months in Michigan, she returned..to Opelousas in October 2008 and obtained custody of her son. Her former last name, Lepine, was changed when she married Patrick. Bruno in 2010.
The defendant denied that she left Louisiana as a result of any indication that law enforcement1 was looking'for her. According to the' defendant, she had no knowledge that the police were looking for her *810 until an officer contacted her mother in 2009., At that point, the defendant’s mother contacted her, and the defendant immediately called the police and met with Darryl Darden, an officer with the Bogalusa Police Department.
On cross-examination, the defendant stated that she did not go to the police in 2008 because she did not actually witness the incident. Conceding that her testimony was inconsistent with the information she conveyed to Captain Sorrell, the defendant testified that she had lied to Captain Sorrell. When asked about Lakeisha Bruno’s statement that the defendant had admitted to leaving Bogalusa due to witnessing a murder, the defendant replied, “Right. And the only reason she knew anything about Bogalusa was because- I used her vehicle to come to talk to Darryl Darden about the case.” The defendant’s mother, Linda Heely, also testified for the defense, and offered testimony similar to that of the defendant.
With regard to the defendant’s testimony about her contact with Officer Darden, Captain Sorrell testified that there was nothing in the police, file to. indicate any such contact and.reiterated that February 6, 2014, was the first point.of police contact with the defendant after the victim’s disappearance. ■
_|jjln support of her argument that the State failed to prove that she was attempting to elude the authorities, the defendant states that Captain Sorrell found her “relatively easily” using normal police procedures. The defendant also maintains that she voluntarily spoke to investigating officers, both Officer Darden and Captain- Sor-rell, as soon as she became aware of their desire to speak with her.. The defendant also notes that the State did not present any evidence- of what occurred in the investigation from 2008 until it was reopened in 2013. Finally, the defendant argues that the statement by Lakeisha Bruno consisted of unreliable double hearsay, although no objection was made at the healing,, and no assignment of error is asserted on appeal with respect to that testimony.
The evidence produced at the hearing reflects that shortly after the offense, the defendant went to New Orleans for several weeks and then abruptly moved to Michigan, leaving her son behind, and remained there for six months. When she returned to Louisiana, she established a new residence in Opelousas. Once there, according to the information developed by Captain Sorrell, the defendant revealed -to Lakeisha Bruno that she moved to Opelousas because she had witnessed a man being beaten to death in Bogalusa. When the defendant was directly confronted with Captain Sorrell’s testimony in that' regard, we note that she did not deny making that statement, but stated that the subject arose because she had been contacted by the Bogalusa Police Department.
Although the defendant claims that she cooperated with the investigating officers in 2009 and again in 2014, and that it was relatively easy for Captain Sorrell to locate her in 2014, the evidence nevertheless establishes certain actions taken by her in the months following the offense that reasonably support the trial court’s conclusion that she was attempting to avoid apprehension at that time. The present prosecution was timely if an interruption occurred at any point on or after May 22, 2008. See La.Code Crim. Pro. art. 579 B. At that time, according to the |Revidence, the defendant was living in Michigan under circumstancés that reasonably support the trial court’s finding that she was attempting-to avoid'detection, apprehension, or prosecution.
When a trial court denies a motion to quash, factual and credibility determina *811 tions should not be reversed in the absence of a clear abuse .of the trial court’s discretion. See State v. Odom, 02-2698 (La.App. 1 Cir. 6/27/03), 861 So.2d 187, 191, writ denied, 03-2142 (La.10/17/03), 855 So.2d 765, Based upon the entirety of the evidence, both direct and circumstantial,. the trial court did not abuse its discretion in determining that the defendant left her usual place of abode for the purpose of avoiding detection, apprehension, or prosecution, and that, in light of those actions, this prosecution was timely instituted. Accordingly, we find no clear abuse of discretion in the trial court’s denial of. the motion to quash the bill of information. The sole assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.